1    *[COUNSEL LISTED ON FOLLOWING PAGE]*

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10                      SAN FRANCISCO DIVISION

11

12   JAMES WARREN ASH, TIMOTHY E.          Case No.  3:14-cv-02183-WHO
     HARRIS, DAVID TROY STREVA, AND
13   TIMOTHY D. BUTLER, on behalf of       **JOINT MOTION FOR AN ORDER**
     themselves, the general public, and all  **APPROVING SETTLEMENT OF**
14   others similarly situated,            **PLAINTIFFS' FLSA CLAIMS AND**
                                           **DISMISSAL OF THE ACTION IN ITS**
15                    Plaintiffs,          **ENTIRETY WITH PREJUDICE;**
                                           **MEMORANDUM AND POINTS IN**
16        v.                               **SUPPORT THEREOF**

17   BAYSIDE SOLUTIONS, INC., a            [Declarations Of Kai-Ching Cha, Eric M.
     California corporation, and DOES 1    Epstein, And Mark Thierman In Support
18   through 100, inclusive,               Thereof, And [Proposed] Order,  Filed
                                           Concurrently Herewith]
19                    Defendants.
                                           Date: September 9, 2015
20                                         Time: 2:00 p.m.
                                           Courtroom:  2, 17th Floor
21
                                           Complaint Filed:    April 8, 2014
22                                         FAC Filed:  January 22, 2015
                                           Trial Date:  July 5, 2016
23

24

25

26

27

28

1 | ERIC M. EPSTEIN, Bar No. 64055
emepstein@aol.com
2 | ERIC M. EPSTEIN, APC
1901 Avenue of the Stars, #1100
3 | Los Angeles, California  90067-6002
Telephone:     310.552.5366
4 | Facsimile:      310.556.8021

5 | MARK R. THIERMAN, Bar No. 72913
laborlawyer@pacbell.net
6 | JOSHUA BUCK, Bar No. 258325
josh@thiermanlaw.com
7 | THIERMAN LAW FIRM, P.C.
7287 Lakeside Drive
8 | Reno, Nevada  89511
Telephone:     775.284.1500
9 | Facsimile:      775.703.5027

10 | Attorneys for Plaintiffs

11 | NATALIE A. PIERCE, Bar No. 191342
npierce@littler.com
12 | KAI-CHING CHA, Bar No. 218738
kcha@littler.com
13 | ROXANNA IRAN, Bar No. 273625
riran@littler.com
14 | LITTLER MENDELSON, P.C.
650 California Street, 20th Floor
15 | San Francisco, California  94108.2693
Telephone:     415.433.1940
16 | Facsimile:      415.399.8490

17 | Attorneys for Defendant
BAYSIDE SOLUTIONS, INC.

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................... 2

II.    STATEMENT OF THE CASE ............................................................................... 3

    A.     Statement Of Facts And Procedural History.................................................. 3

    B.     Investigation And Discovery. ....................................................................... 4

    C.     Settlement Negotiations And Settlement ...................................................... 4

III.   LEGAL ARGUMENT ........................................................................................... 5

    A.     The Settlement Of Plaintiffs' FLSA Claims Should Be Approved Pursuant To 29 U.S.C.  Section 216(b). .................................................................................. 5

        1.     The Settlement Should Be Approved Because It Was Reached In An Adversarial Context. ............................................................................... 6

        2.     The Settlement Should Be Approved Because There Are Issues Of FLSA Coverage Actually In Dispute. ...................................................... 6

        3.     The Settlement Should Be Approved Because It Is A Fair, Reasonable And Adequate Resolution Of This Action........................................................ 7

            a.     The Settlement Is The Result Of Serious, Informed, Non-Collusive Negotiations Between Plaintiffs And Defendant................. 7

            b.     Sufficient Investigation And Discovery Has Occurred To Assess The Fairness Of The Settlement............................................. 7

            c.     The Settlement Is A Fair, Reasonable And Adequate Compromise Of This Lawsuit Based On The Strength And Weaknesses Of Plaintiffs' Case And The Risks And Costs Of Further Litigation. ................................................................................ 8

            d.     The Settlement Is Fair Reasonable And Adequate Given The Range Of Plaintiffs' Possible Recovery. ............................................. 8

            e.     Counsel Are All Of The Opinion That The Settlement Is Fair, Reasonable And Adequate. .............................................................. 11

    B.     Plaintiffs' Attorneys' Fees And Costs Should Be Approved................................... 11

        1.     Plaintiffs' Attorneys' Fees Are Reasonable..................................................... 11

        2.     Counsel Is Also Entitled To Reasonable Costs Of $25,526. ........................ 13

IV.    CONCLUSION.......................................................................................................... 13

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3

CASES

4

*Brooklyn Savings Bank v. O'Neil,*
    324 U.S. 697, 89 L.Ed. 1296, 65 S.Ct. 895 (1945)..................................................5

5

6

*Dail v. George A. Arab, Inc.*,
    391 F. Supp. 2d 1142 (M.D. Fla. 2005) .................................................................6

7

8

*In re Continental Illinois SEC.*,
    962 F.2nd 566, 573 (7th Cir. 1992) .....................................................................12

9

10

*In re M.D.C. Holdings Sec. Litig.*,
    Fed.Sec. L.Rep. (CCH) § 95,474 (1990) ............................................................12

11

*Kirkorian v. Borelli,*
    695 F.Supp. 446 (ND. Cal. 1988) .......................................................................12

12

13

*Leverso v. SouthTrust Bank of Ala., Nat. Assoc.*,
    18 F.3d 1527 (11th Cir. 1994) ..........................................................................5, 6

14

*Lynn's Food Stores, Inc. v. United States,*
    679 F.2d 1350 (11th Cir. 1982) ......................................................................5, 6, 7

15

16

*Yue Zhou v. Wang's Rest.*,
    2007 U.S. Dist. LEXIS 60683 (N.D. Cal. Aug. 8, 2007)........................................5

17

STATUTES

18

Business & Professions Code sections 17200, *et seq.* .......................................................3

19

Fair Labor Standards Act ("FLSA") (29 U.S.C. §§ 201, *et seq.*) ........................................ passim

20

Labor Code Private Attorneys' General Act of 2004 ("PAGA") ..........................................1, 3, 4

21

Labor Code § 201................................................................................................3

22

Labor Code § 202................................................................................................3

23

Labor Code § 203................................................................................................3

24

Labor Code § 226(a) ...........................................................................................3

25

Labor Code § 510................................................................................................3

26

Labor Code § 558................................................................................................3

27

28

Labor Code § 1102.5............................................................................................1, 4

i

Labor Code §§ 2698 *et seq.* ...................................................................................................3

**OTHER AUTHORITIES**

29 C.F.R. § 541.602(a)(2004) .............................................................................................8, 9

Wage Order No. 4-2001 ...........................................................................................................3

JOINT MOTION FOR ORDER APPROVING SETTTLEMENT AND DISMISSAL ACTION
CASE NO. 3:14-cv-02183-WHO

1    **NOTICE OF MOTION AND MOTION**

2       **PLEASE TAKE NOTICE** that on Wednesday, September 9, 2015 at 2:00 p.m., or soon

3    thereafter as the matter may be heard in Courtroom 2 of this Court, 450 Golden Gate Avenue, 17th

4    Floor, San Francisco, California, 94102, Defendant BAYSIDE SOLUTIONS, INC. ("Defendant")

5    and named Plaintiffs JAMES WARREN ASH, TIMOTHY E. HARRIS, DAVID TROY STREVA

6    and TIMOTHY D. BUTLER ("Named Plaintiffs") as well as opt-in Plaintiffs ADAM LINKE,

7    GIOVANNI JAVIER, SANDRA JAVIER, JEFFREY BELTON, ROBERT SILLAS, TERESA

8    LAM and DAVID ANDREW ("Opt-In Plaintiffs") (collectively, "Plaintiffs") will and hereby move

9    this Court for an Order granting approval of the parties' settlement as a fair and reasonable

10   resolution of a bona fide wage dispute under the Fair Labor Standards Act ("FLSA") (29 U.S.C. §§

11   201, *et seq*.) and for an Order dismissing this lawsuit with prejudice.

12       This motion is made on the grounds that Plaintiffs' First Amended Complaint ("FAC")

13   alleges, in part, that they are former employees of Defendant who were employed pursuant to a

14   Standard Employment Agreement which contained the following compensation provision:

15       **Compensation**. You acknowledge and understand that you are
16       employed and paid on a per hour basis, weekly and on Fridays. For
         each hour of work performed by you under this Agreement, we will
17       pay you at your Regular Exempt (no overtime) rate.

18   Plaintiffs alleged that they and other individuals who had been employed by DEFENDANT pursuant

19   to the Standard Employment Agreement were not properly classified as exempt pursuant to the

20   FLSA or California wage and hour laws. Plaintiffs are seeking compensation under the FLSA and

21   California law for alleged unpaid overtime wages, waiting time penalties, inaccurate wage

22   statements, and civil penalties pursuant to the Labor Code Private Attorneys' General Act of 2004

23   ("PAGA"). Plaintiffs have also asserted claims for breach of contract for alleged breach of the

24   Standard Employment Agreement. Plaintiffs Harris and Butler have additionally alleged individual

25   claims of wrongful termination in violation of public policy, wrongful termination in violation of

26   Labor Code section 1102.5, and civil penalties pursuant to PAGA.

27       Defendant contends Plaintiffs, and other employees were properly classified as exempt

28   employees and properly paid on a salary basis. Defendant denied and continues to deny that: it

1
JOINT MOTION FOR ORDER APPROVING SETTTLEMENT AND DISMISSAL ACTION
CASE NO. 3:14-cv-02183-WHO

1   breached the Standard Employment Agreement; any of Defendant's compensation policies and/or

2   practices violated any federal or state law; and it failed to properly compensate Plaintiffs and/or its

3   other employees.

4        During the pendency of this action, the parties engaged in extensive discovery of each of

5   Plaintiffs' claims and Bayside's defenses, as well as performed their own independent analysis and

6   assessment of the potential risks of pursing this litigation, as well as the range of potential recovery

7   should this matter proceed through trial.  Following this investigation and discovery, the parties

8   engaged in non-collusive, arm-length settlement negotiations.  The parties reached a settlement of all

9   of Plaintiffs' claims against Bayside, including Plaintiffs' FLSA claims as a result of these

10  negotiations ("Settlement").  The parties believe the Settlement represents a fair, reasonable and

11  adequate compromise of this action in its entirety, including a settlement of Plaintiffs' FLSA claims.

12  The parties therefore move this Court for an Order approving the Settlement of Plaintiffs' FLSA

13  claims and for an Order dismissing this action in its entirety with prejudice.

14       This Motion is based upon this notice of motion and motion, the accompanying

15  Memorandum of Points and Authorities in support thereof, the declarations submitted in support of

16  this motion, all accompanying exhibits, all pleadings and papers on currently on file with this Court

17  in this action, and such further evidence and arguments as may be presented at hearing.

18                    **MEMORANDUM OF POINTS AND AUTHORITIES**

19  **I.      INTRODUCTION**

20       The parties hereby submit that the FLSA settlement reached is a fair, adequate, and

21  reasonable resolution of a bona fide dispute for wages and should be approved.  (*See* Declaration of

22  Kai-Ching Cha ("Cha Dec."), ¶ 2, Exhibit A [Stipulation and Settlement Agreement].)  For the

23  reasons more completely stated within, this motion should be granted because the Settlement

24  represents a fair, reasonable and adequate compromise of Plaintiffs' FLSA claims and the parties

25  have reached an agreement on settling Plaintiffs' remaining claims.  Thus, the parties respectfully

26  request the Court approve the settlement of Plaintiffs' FLSA claims and enter an Order dismissing

27  this action with prejudice in its entirety.  (Stipulation and Settlement Agreement ¶ 10.)

28

## II.   STATEMENT OF THE CASE

### A.   Statement Of Facts And Procedural History.

This lawsuit was initiated by a Complaint filed by the Named Plaintiffs on behalf of themselves individually and all other similarly situated individuals in the Alameda Superior Court on April 8, 2014.  (Notice of Removal, Exh. A, Docket No. 1.)  Defendant removed the Complaint to the United States District Court, Northern District of California, San Francisco Division, Case Number 3:14-cv-02183-WHO.   (Docket No. 1.)   Subsequently, Named Plaintiffs filed a First Amended Complaint (the "FAC").  (FAC, Docket No. 36.)

In their FAC, Named Plaintiffs alleged on behalf of themselves and other individuals who had been employed by Defendant pursuant to a Standard Employment Agreement containing the language referenced below that they were not properly classified as exempt and were not paid overtime wages for hours worked over 40 in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA").  The Standard Employment Agreement signed by Plaintiffs contained the following compensation provision:

> **Compensation**. You acknowledge and understand that you are employed and paid on a per hour basis, weekly and on Fridays.  For each hour of work performed by you under this Agreement, we will pay you at your Regular Exempt (no overtime) rate.

Named Plaintiffs additionally alleged the following California law claims on behalf of themselves and other individuals who were allegedly not properly classified as exempt: (1) unpaid overtime wages for hours worked over eight hours in a day and/or forty hours in one week, pursuant to Labor Code sections 510, 558, 1194 and Wage Order No. 4-2001; (2) waiting time penalties for unpaid overtime wages due upon termination, pursuant to Labor Code sections 201-203; (3) failure to issue accurate and itemized wage statements, pursuant to Labor Code section 226(a); (4) civil penalties pursuant to the Labor Code Private Attorneys' General Act of 2004 ("PAGA") for unpaid overtime, waiting time penalties and failure to issue accurate and itemized wage statements pursuant to Labor Code sections 2698 *et seq.*; (5) unfair competition, pursuant to Business & Professions Code sections 17200, *et seq.*; and (6) breach of contract.  Plaintiffs Harris and Butler also alleged the following individual claims against Defendant in the FAC: (1) wrongful termination in violation of

1   public policy; (2) wrongful termination in violation of Labor Code section 1102.5; and (3) civil

2   penalties pursuant to the PAGA for wrongful termination in violation of Labor Code section 1102.5.

3        On January 30, 2015, the Court granted the Named Plaintiffs' Motion for Conditional

4   Certification and Notice of FLSA Collective Action.  (Docket No. 38, Jan. 30, 2015.)  Notice of the

5   FLSA collective action claim was mailed to 119 current and former employees of Defendant who

6   had entered into the Standard Employment Agreement containing the aforementioned language.  By

7   the close of the ninety-day opt-in period, only 13 individuals had opted into the lawsuit.  (Docket

8   Nos. 40-44.)  Defendant engaged in individualized discovery and six of the opt-in plaintiffs refused

9   to participate, resulting in their dismissal.  (Docket Nos. 48, 49.)  As a result, seven opt-in plaintiffs

10  remain in this litigation (the "Opt-In Plaintiffs").

11       Defendant denied and continues to deny that it violated any California or federal law, statute,

12  or regulation with respect to Plaintiffs' employment.  Defendant further contends that it properly

13  classified Plaintiffs and all of its other employees who signed the Standard Employment Agreement

14  containing the aforementioned language as exempt and properly compensated them for all hours

15  worked.

16      **B.**    **Investigation And Discovery.**

17       Plaintiffs' counsel and Defendant's counsel have conducted a thorough investigation into the

18  facts of this litigation, including an extensive review of relevant documents and data, exchange of

19  initial disclosures, multiple sets of requests for production of documents, the taking of Named

20  Plaintiffs' depositions, the taking of Opt-In Plaintiff depositions, and a third party witness

21  deposition, and have diligently pursued an investigation of Named Plaintiffs' and Opt-In Plaintiffs'

22  claims.

23      **C.**    **Settlement Negotiations And Settlement**

24       The parties participated in two private mediations.  (Cha Dec., ¶ 4.)  The first mediation, on

25  November 3, 2014 before class action mediator Michael J. Loeb, Esq., of JAMS, did not result in

26  settlement.  In June 2015, the parties participated in a second mediation before class action mediator

27  Michael E. Dickstein, Esq. during which, the parties agreed upon terms of a proposed settlement.

28  The parties now present this Settlement for the Court's approval.

4

## III.   LEGAL ARGUMENT

### A.   The Settlement Of Plaintiffs' FLSA Claims Should Be Approved Pursuant To 29 U.S.C.  Section 216(b).

In general, the overtime provisions of the FLSA are mandatory and not subject to negotiation or bargaining between employer and employees.  *See e.g., Brooklyn Savings Bank v. O'Neil,* 324 U.S. 697, 706, 89 L.Ed. 1296, 65 S.Ct. 895 (1945).  This general rule recognizes that there may be inequities in the bargaining power between employees and their employer.  If certain conditions are met however, an employee may settle and waive their FLSA claims against an employer.

Currently, there are two ways in which FLSA claims can be settled and released by employees.  First, 29 U.S.C. Section 216(c) of the FLSA allows employees to settle and waive their claims under the FLSA if the payment of unpaid wages by the employer to the employee is supervised by the Secretary of Labor.  29 U.S.C. § 216(c); *Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1353 (11th Cir. 1982).  Second, in the context of a private lawsuit bought by an employee against his/her employer under Section 216(b) of the FLSA, an employee may settle and release his/her FLSA claims against an employer if: (1) the settlement occurs in an adversarial context; (2) there are issues of FLSA coverage and/or computations actually in dispute; and (3) the District Court enters an order approving the settlement after reviewing the settlement's fairness.  29 U.S.C. § 216(b); *Lynn's Food Stores, Inc.,* 679 F.2d at 1353; *see also Yue Zhou v. Wang's Rest.,* 2007 U.S. Dist. LEXIS 60683 at *1 (N.D. Cal. Aug. 8, 2007) (the court is the gatekeeper for FLSA settlements, there to ensure that the settlement is appropriate and does not undermine the purpose of the FLSA).  The penultimate question is whether the settlement reflects a fair and reasonable compromise over coverage under the FLSA and/or the computation of wages, and if it does, the court should approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores, Inc.,* 679 F.2d at 1354.

In determining whether the proposed settlement is a fair and reasonable resolution of the claim, the District Court generally reviews the settlement using the factors adopted for reviewing the fairness of class action settlements generally.  *Leverso v. SouthTrust Bank of Ala., Nat. Assoc.,* 18 F.3d 1527, 1531 n.6 (11th Cir. 1994).  These factors include: (1) the existence of fraud or collusion;

(2) the stage of the proceedings and the amount of discovery completed; (3) the complexity, expense and likely duration of the litigation; (4) the probability of plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of counsel. *Id*. There is a "strong presumption" that an FLSA settlement reached as part of the settlement of a lawsuit is fair, reasonable and adequate under these factors. *Dail v. George A. Arab, Inc.*, 391 F. Supp. 2d 1142, 1146 (M.D. Fla. 2005) (in reviewing the settlement of a FLSA claim, "the Court should keep in mind the 'strong presumption' in favor of finding a settlement fair"). Applying these factors to this action, the Court should approve the parties' Settlement and dismiss Plaintiffs' action with prejudice.

> **1.     The Settlement Should Be Approved Because It Was Reached In An Adversarial Context.**

The Settlement presented for this Court's approval was reached during the parties' second mediation before an experienced class action mediator and in the course of this litigation. (Stipulation and Settlement Agreement ¶ 5.)  It therefore clearly occurred in an adversarial context. *Lynn's Food Stores, Inc*., 679 F.2d at 1353.

> **2.     The Settlement Should Be Approved Because There Are Issues Of FLSA Coverage Actually In Dispute.**

Plaintiffs allege Defendant improperly classified them as exempt employees and violated 29 U.S.C. Sections 207 and 216 by failing to pay Plaintiffs for all hours worked over 40 hours per week. (FAC, Docket No. 36.)  Meanwhile, Defendant contends Plaintiffs were properly classified as exempt employees under the executive exemption, or in the alternative, under the highly compensated employee exemption, and were always properly paid on a salary basis.  Moreover, Defendant contends that other employees employed pursuant to the Standard Employment Agreement were likewise properly classified as exempt and properly compensated in accordance with the terms of the Standard Employment Agreement.  (Cha Dec., ¶ 3.)  Thus, there exists an actual dispute between the parties whether the FLSA is even a viable claim in this action. *Lynn's Food Stores, Inc*., 679 F.2d at 1353.  Moreover, Defendant contends that several of the Opt-In Plaintiffs would be exempt from overtime pursuant to the Computer Professional Exemption.

**3.      The Settlement Should Be Approved Because It Is A Fair, Reasonable And Adequate Resolution Of This Action.**

**a.      The Settlement Is The Result Of Serious, Informed, Non-Collusive Negotiations Between Plaintiffs And Defendant.**

The parties reached this Settlement only after they conducted extensive and protracted non-collusive arm's-length negotiations.   (Stipulation and Settlement Agreement ¶ 5.)   The parties participated in two private mediations, the first on November 3, 2014, and the second in June 2015. (*Id.*)   Both mediations were conducted by experienced class action mediators.   (*Id.*)   Moreover, Plaintiffs have been represented by counsel at all times during the course of this litigation and at all times during the settlement discussions.   (Cha Dec., ¶ 4.)   Further, given that Named Plaintiffs and all but one Opt-In Plaintiff no longer work for Bayside, the perceived coercive effects believed to be inherent in the employee/employer relationship and/or the perceived inequities in the bargaining power between an employer and its employees are not present in this action.   Indeed, because the parties' employer/employee relationship ended long before the settlement discussions occurred, neither party had any ability, actual or perceived, to compel, coerce or otherwise require the other to settle any of their claims, causes of action or defenses on terms other than on those terms to which the party independently agreed were fair, reasonable and adequate.

**b.      Sufficient Investigation And Discovery Has Occurred To Assess The Fairness Of The Settlement.**

Counsel for Plaintiffs and Defendant have engaged in extensive investigation and discovery regarding each of Plaintiffs' claims and Defendant's defenses sufficient to allow the parties respective counsel to assess the Settlement's fairness.   (Stipulation and Settlement Agreement ¶ 8.) This investigation and discovery has included, an exchange of initial disclosures, conducting written discovery on each of Plaintiffs' claims and Defendant's defenses as well as taking Named Plaintiffs' depositions, the depositions of Opt-In Plaintiffs, and a third party witness deposition.   (*Id.*)   As a result, counsel for the parties have sufficient knowledge to allow them to fully evaluate the merits of the Plaintiffs' claims and Defendant's defenses and assess the Settlement's fairness.

1
2

           **c.**      **The Settlement Is A Fair, Reasonable And Adequate Compromise Of This Lawsuit Based On The Strength And Weaknesses Of Plaintiffs' Case And The Risks And Costs Of Further Litigation.**

3  Plaintiffs' allege, among other items, that they were improperly classified as exempt and not

4  compensated in accordance with the terms of the Standard Employment Agreement.  (FAC, Docket

5  No. 36.)  Thus, Plaintiffs contend Defendant violated California and the FLSA's overtime premium

6  pay provisions by failing to pay Plaintiffs for hours worked over 40 hours per week and over 8 hours

7  per day.  Defendant denied and continues to deny each and every claim Plaintiffs raise.  (Stipulation

8  and Settlement Agreement ¶ 9.)  Defendant contends Plaintiffs were properly classified as exempt

9  from the FLSA and California Labor Code overtime requirements because they were employed in

10  managerial or supervisory roles, or exempt pursuant to the Computer Professional Exemption. In

11  addition, Plaintiffs were properly compensated on a salary basis.  29 C.F.R. § 541.602(a)(2004).

12  Counsel on both sides have clearly perceived the risks and uncertainties inherent in their

13  respective positions as well as the risks associated with pursuing this case further.  (Stipulation and

14  Settlement Agreement ¶¶ 8-9.)  The parties believe the proposed Settlement is a fair, reasonable and

15  adequate compromise of the claims given the strength and weaknesses of their respective claims.

16  The Court's policy favoring settlements also weighs in favor of approving the Settlement.

17
18

           **d.**      **The Settlement Is Fair Reasonable And Adequate Given The Range Of Plaintiffs' Possible Recovery.**

19  With respect to Named Plaintiffs, Plaintiff Ash worked for Defendant from approximately

20  July 22, 2013 to approximately October 4, 2013.  (FAC ¶ 7, Docket No. 36.)  Plaintiff Harris worked

21  for Defendant from approximately July 8, 2013 to approximately January 27, 2014.  (FAC ¶ 8,

22  Docket No. 36.)  Plaintiff Streva worked for Defendant from approximately July 8, 2013 to

23  approximately December 30, 2013.  (FAC ¶ 9, Docket No. 36.)  Plaintiff Butler worked for

24  Defendant from approximately July 17, 2013 to approximately January 27, 2014.  (FAC ¶ 10,

25  Docket No. 36.)  Concerning the Opt-In Plaintiffs, Opt-In Plaintiff Andrew worked for Defendant

26  from July 2013 to on or about December 12, 2013. (Cha Dec., ¶ 5.)  Opt-In Plaintiff Belton worked

27  for Defendant from September 2013 to March 2014.  (*Id.*)  Opt-In Plaintiff Giovanni Javier worked

28  for Defendant from June 2013 to on or about October 2013.  (*Id.*)  Opt-In Plaintiff Sandra Javier

8

worked for Defendant from May 2013 to on or about January 2014.  (*Id*.)  Opt-In Plaintiff Lam worked for Defendant from June 2013 to on or about December 2013.  (*Id*.)  Opt-In Plaintiff Linke worked for Defendant from December 2012 to on or about February 2014.  (*Id*.)  Opt-In Plaintiff Sillas worked for Defendant from April 2012 to the present.  (*Id*.)

Although, the Named Plaintiffs and Opt-In Plaintiffs are receiving varying amounts as their share of the settlement, said amounts were allocated in a fair and reasonable manner based upon several factors, including, the total estimated hours over 40 worked by each Named Plaintiff and Opt-In Plaintiff, their hourly rates, and the risk with respect to each such Plaintiff that they would be found to be exempt and therefore not entitled to any overtime wages at all.  Furthermore, additional consideration was given to the Named Plaintiffs for providing full and complete general releases and to compensate them for jeopardizing their future employment opportunities by reason of suing their former employer which would be disclosed by a litigation search.  Finally, two of the Named Plaintiffs, Harris and Butler, received additional compensation for their wrongful termination claims. (*See* Declaration of Eric M. Epstein ("Epstein Dec."), ¶ 16.)

Applying the above criteria to the pool of settlement funds available to Plaintiffs resulted, in general, in those Plaintiffs who worked the lowest number of overtime hours, or who had the lowest hourly rates, receiving lesser settlement amounts than those Plaintiffs who worked the highest number of overtime hours, or had the highest hourly rates, with an upward adjustment for the Named Plaintiffs for the reasons stated above, and a downward adjustment for a couple of the Plaintiffs due to the heightened risk that they would be found to be exempt.  (Epstein Dec., ¶ 17.)

Thus, by way of example, the Plaintiff receiving the highest settlement amount is Named Plaintiff, Timothy Harris, who is receiving $27,371 based on 261 hours of alleged overtime multiplied by $101.25 (1½ x his base rate of $67.50 per hours), plus 7 hours at $135 (2 times his base rate) which equals $27,371.  Due to the available funds for settlement, no one received 100% of their alleged overtime hours, as the pool of available money equaled approximately $130,000 and the total potential overtime hours was equal to approximately $260,000 or approximately 200% of the available funds.  Thus, with no adjustments, Plaintiff Harris would have received 50% of said amount or approximately $13,685.  However, he received a substantial upward adjustment of

9

$13,686 for providing a full and complete general release, running the risk of jeopardizing his future employment opportunities, and specifically releasing his wrongful termination claim.  (Epstein Dec., ¶ 18.)

On the other hand, the Plaintiff receiving the smallest settlement amount is Opt-In Plaintiff, Giovanni Javier, who is receiving $1,877.  Mr. Javier worked for Bayside for only approximately three to four months and he alleged by far the lowest number of overtime hours of any Plaintiff.  In fact, his overtime hours were half those of the next lowest Plaintiff.  In addition, his hourly rate was only $50.00 per hour, which also put him at the lower end of the scale.  (Epstein Dec., ¶ 19.)

The Opt-In Plaintiff receiving the highest settlement is David Andrew, who is receiving $20,000.  He alleged approximately 645 hours of overtime at $106.50 per hour (1½ times his base rate of $71 per hour) which equals $68,692.  However, this would have averaged approximately 30 hours of overtime a week, which was by far the highest estimate of any Plaintiff, and therefore his claim was substantially discounted for purposes of settlement, as the next highest number of alleged overtime hours of any of the Opt-In Plaintiffs was only about 15 hours per week and the average number of alleged overtime hours for all the remaining Opt-In Plaintiffs was only approximately 7.5 hours per week.  Moreover, none of the Named Plaintiffs had more than 261.5 hours of alleged total overtime as compared to the 645 hours estimated by Mr. Andrew.  In addition, there was a heightened risk that Mr. Andrew may have been exempt and that was also factored in to the amount of his settlement.  Thus, although he got a downward adjustment, he still is receiving $20,000 which is the most of any Opt-In Plaintiff.  (Epstein Dec., ¶ 20.)

Counsel believes that the settlement is fair and reasonable as to each of the Named Plaintiffs and Opt-In Plaintiffs.  The average amount paid to the Plaintiffs is approximately $11,800, which is substantial by any means.  (Epstein Dec., ¶ 20.)  More importantly, each of the Named Plaintiffs and Opt-In Plaintiffs also believe that the settlement is fair and reasonable and they have all accepted the settlement amounts that were allocated to each of them by agreeing to the Settlement and accepting its terms.

**e.**      **Counsel Are All Of The Opinion That The Settlement Is Fair, Reasonable And Adequate.**

All counsel believe the proposed settlement is fair, reasonable and adequate in light of the complexities of the case, the uncertainties of further litigation, and that it represents a fair and reasonable settlement of this lawsuit.  (Stipulation and Settlement Agreement ¶ 8.)

**B.      Plaintiffs' Attorneys' Fees And Costs Should Be Approved.**

Plaintiffs have approximately $288,125 in attorneys' fees, at their regular hourly rates, and approximately $27,001.12 in costs.[1]  However, pursuant to the terms of the settlement agreement, Plaintiffs are requesting only $85,072 in fees and $25,526 in costs.

**1.      Plaintiffs' Attorneys' Fees Are Reasonable.**

Although counsel for Plaintiffs have retainer agreements with each of the Named Plaintiffs which provides for a 40% contingency fee, counsel's request of $85,072 in attorneys' fees represents only 35% of the gross recovery.  Moreover, Plaintiffs' counsel have devoted approximately 477.35 hours to this matter.[2]  Mr. Thierman's hourly rate is $800 per hour, Mr. Epstein's hourly rate is $650 per hour, Mr. Buck's is $500 per hour, and Mr. Hendrickson's is $300 per hour.  (*See* Declaration of Mark R. Thierman ("Thierman Dec."), ¶ 20.)  Multiplying the hours at the attorneys' applicable hourly rates results in total attorneys' fees of $288,125.  (*See* Epstein Dec. ¶¶ 7-10; Thierman Dec. ¶¶ 18-20.)  If the Court awards $85,072 in attorneys' fees as requested by counsel, then the Lodestar multiplier would be a negative .30.  The exact breakdown and calculation for Lodestar analysis is set forth in detail in the Epstein Dec. ¶¶ 12 and 13.

In other words, counsel is only requesting 30% of its regular hourly rates.  Thus, rather than getting a multiplier to account for the risk that Plaintiffs' counsel undertook in accepting this case on a contingency basis, Plaintiffs' counsel is actually getting a negative multiplier of .30.  The time devoted by each attorney to this matter, along with the attorneys' regular hourly rates, and the nature

[1] This includes $1,000 in costs that counsel estimates will be incurred after the preparation of this motion for travel and lodging in attending the hearing on the motion for final approval.

[2] This includes approximately 18 hours that counsel anticipates devoting to this matter after the date of this Motion for travel and lodging in attending the hearing on the motion for final approval, travel to and from San Francisco for same, communicating with Plaintiffs, opposing counsel and co-counsel, and effectuating the settlement.

11

JOINT MOTION FOR ORDER APPROVING SETTTLEMENT AND DISMISSAL ACTION
CASE NO. 3:14-cv-02183-WHO

1   of the services performed, is set forth in Exhibit 1, attached to the Epstein Dec. and Exhibits 2

2   through 4 to the Thierman Dec.

3          The attorneys' fees are particularly reasonable in light of the fact that Plaintiffs' counsel has

4   obtained a very favorable settlement for the Named Plaintiffs and Opt-In Plaintiffs.  This is not a

5   "coupon" settlement, but puts real money in the hands of the Named Plaintiffs and Opt-In Plaintiffs.

6   The average Plaintiff will receive approximately $11,800 and the highest amount for a Plaintiff is

7   $27,000 and the lowest amount is $1,877.  This is particularly favorable in light of the relatively

8   short period of time that they worked for Defendant, the potential defenses available to Defendant,

9   and the risk inherent in prosecuting Plaintiffs' claims.  Moreover, and most importantly, all of the

10  Named Plaintiffs and Opt-In Plaintiffs are satisfied with the settlement, have accepted the same, and

11  no one has objected to the attorneys' fees.

12         Counsel's request for a fee of 35% of the total settlement is comparable to customary fee

13  arrangements in private litigation, which generally ranges from 30% to 40%.  Class counsel are

14  entitled to the fee they would have received had they handled a similar suit on a contingency fee

15  basis with a similar outcome.  *In re Continental Illinois SEC.*, 962 F.2nd 566, 573 (7th Cir. 1992).

16  In considering the reasonableness of the fees, the Court should consider the nature of the contingent

17  agreements between counsel and class representatives.  *See Kirkorian v. Borelli*, 695 F.Supp. 446,

18  455–456 (ND. Cal. 1988) (looking to the contingency fee agreements between counsel and members

19  of the class for guidance).  These arrangements are relevant because "[i] in common fund cases, it is

20  reasonable that the fee award would be in those fee arrangements, based on historic and prevailing

21  market rates for contingent representation."  *In re M.D.C. Holdings Sec. Litig.*, [1990] Fed.Sec.

22  L.Rep. (CCH) § 95,474 (stating that "in private contingent litigation, fee contracts have traditionally

23  ranged from 34% to 40% of the total recovery").

24         Here the retainer between the individual Named Plaintiffs calls for counsel to receive 40% of

25  the recovery.  (Epstein Dec., ¶ 10.)  This retainer agreement constitutes a fair base line for the class

26  as a whole, and the fee requested is less than the amount agreed to by the Named Plaintiffs.

27

28

## 2.    Counsel Is Also Entitled To Reasonable Costs Of $25,526.

As set forth in the Thierman Dec., ¶ 20 and Exhibit 5 attached thereto, Thierman Buck LLP, and its predecessor firm, the Thierman Law Firm, incurred total costs of $27,001.12 in connection with this case.[3]  These costs include travel and lodging for out of town depositions and mediations, the fees for the mediators in two separate mediations, photocopies, computer research, filing fees, costs of deposition transcripts, and miscellaneous costs as specified therein.   The settlement agreement provides for costs of $25,526, and although counsel has incurred costs of $27,001.12, it is only requesting the sum of $25,526, which is $1,475.12 less than the costs actually incurred.

## IV.    CONCLUSION

For the reasons stated above, Named Plaintiffs, James Warren Ash, Timothy E. Harris, David Troy Streva and Timothy D. Butler, and Opt-In Plaintiffs, Adam Linke, Giovanni Javier, Sandra Javier, Jeffery Belton, Robert Sillas, Teresa Lam and David Andrew and Defendant Bayside Solutions, Inc. hereby respectfully request that the Court approve the proposed Settlement and enter an Order approving the settlement, approving the attorneys' fees and costs, and dismissing this action with prejudice.

Dated:  August 4, 2015

ERIC M. EPSTEIN, A Professional Corporation

By:    /s/ Eric M. Estein
ERIC M. EPSTEIN, Bar No. 64055

THIERMAN BUCK LLP

By:    /s/ Mark R. Thierman
MARK R. THIERMAN, Bar No. 72913
JOSHUA D. BUCK, Bar No. 285325

Attorneys for Plaintiffs
JAMES WARREN ASH, TIMOTHY E. HARRIS,
DAVID TROY STREVA, AND TIMOTHY D.
BUTLER

//

//

//

---

[3]  As stated previously, this includes an additional $1,000 in estimated costs after the filing of this motion (see fn. 1), *supra*.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON, P.C.

By: ___/s/ Kai-Ching Cha_____

NATALIE A. PIERCE, Bar No. 191342
KAI-CHING CHA, Bar No. 218738
ROXANNA IRAN, Bar No. 273625

Attorneys for Defendant
BAYSIDE SOLUTIONS, INC.

*Pursuant to Civil Local Rule 5-1(i)(3), the filer hereby attests that concurrence in the filing of this document has been obtained from all signatories.

---

14

JOINT MOTION FOR ORDER APPROVING SETTTLEMENT AND DISMISSAL ACTION